UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| WOODROW K. WILSON | CIVIL ACTION |
| VERSUS | |
| | 14-499-SDD-EWD |
| PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY | |

# RULING

The Court takes up several Motions: (1) Provident Life and Accident Insurance Company's ("Provident") *Motion to Establish that Case is Governed by ERISA*,[1] (2) Provident's *Motion for Summary Judgment Seeking Dismissal of Plaintiff's Claim for Failure to Timely Provide Notice and Proof of Loss and Failure to Timely Institute Legal Proceedings*,[2] and (3) cross *Motions for Summary Judgment* based on the administrative record filed by both Parties.[3] The Parties have extensively briefed the issues. For the following reasons, the Court GRANTS Provident's *Motion for Summary Judgment Seeking Dismissal of Plaintiff's Claim for Failure to Timely Provide Notice and Proof of Loss and Failure to Timely Institute Legal Proceedings* and DENIES as moot Provident's *Motion to Establish that Case is Governed by ERISA* and the Parties' cross motions for summary judgment based on the administrative record.

---

[1] Rec. Doc. 21.
[2] Rec. Doc. 22.
[3] Rec. Doc. 16; Rec. Doc. 23.
29047v.2

1

**I.     BACKGROUND**

This case was initiated in this Court by the Plaintiff, Woodrow K. Wilson ("Wilson"), invoking the Courts diversity jurisdiction. The Court has examined and confirms its subject matter jurisdiction.

Wilson is a shareholder employee of the Woodrow Wilson Construction Company, Inc. ("WWCC"), a closely held[4] domestic business corporation.[5]  Wilson submitted an application for individual disability income insurance from Provident Life & Accident Insurance Company ("Provident") dated August 3, 1993.[6]  In his application, Wilson represented that he was an employee of WWCC and that his employer would pay all of the disability coverage with no portion of the premium to be included in his taxable income.[7]  Provident issued a Disability Income Policy to the Plaintiff, Woodrow K. Wilson, effective on September 1, 1993. WWCC also acquired disability policies from Provident for the other 2 shareholders, Plaintiff's brothers, Jim A. Wilson and Mark A. Wilson.[8] WWCC did not offer nor provide disability policies to any other employees.[9]  Provident billed WWCC directly for the disability policies issued to the Woodrow brothers, and WWCC paid the monthly premiums.

Wilson began "developing physical difficulties in late 2008".[10] Wilson claims that his physical problems continued to progress to include his shoulder, his left knee, and his lower back.  According to Wilson, "[i]n late 2008, when his physical condition began to

---

[4] WWCC is wholly owned by 3 brothers, Woodrow K. Wilson, Jim A. Wilson and Mark A. Wilson.
[5] Rec. Doc. 21-4.
[6] Rec. Doc. 21-2, p. 4.
[7] Rec. Doc. 21-2, p. 4.
[8] Rec. Doc. 21-2, p. 19.  Wilson is a beneficiary under Disability Income Policy No. 06-337-B-7714427 issued by Provident.
[9] Rec. Doc. 16-2, p. 1.
[10] Rec. Doc. 20, ¶12.
29047v.2

2

deteriorate"[11] his "limitations from osteoarthritis and other degenerative conditions began to affect his ability to work"[12]. Wilson alleges that his deteriorating physical conditions have caused him to remain under the continuous and regular care of physicians from 2008 to the present.[13] Wilson claims that he "is entitled to disability benefits under the policy from October 13, 2008, the date of his first treatment . . . and the time from which he was unable to perform the substantial and material duties of his occupation."[14]

Wilson submitted an Individual Disability Claim Form to Provident on April 18, 2013.[15] Wilson reported his date of disability as October 13, 2008 in an early phone conversation with Provident[16] and submitted a statement from his physician, Dr. Leo Blaize, who likewise stated that the onset of Wilson's disability--degenerative arthritis--was October 13, 2008.[17] In a letter dated November 14, 2013, Provident informed Wilson that his claim had been denied for the following reasons:[18]

**Decision/Reason**:

We have determined that you are able to perform the duties of your occupation. Because you are not disabled according to the policy, benefits are not payable.[19]

---

[11] Rec. Doc. 20, ¶17.
[12] Rec. Doc. 20, ¶34.
[13] Rec. Doc. 20, ¶19.
[14] Rec. Doc. 20, ¶36.
[15] Rec. Doc. 10-2, pp. 46-53 (under seal). This followed an initial notice of his intention to file a claim for disability benefits, dated April 17, 2013. Rec. Doc. 27-1, #7. *See also*, Rec. Doc. 1, ¶18.
[16] Rec. Doc. 10-2, p. 163 (under seal).
[17] Rec. Doc. 10-2, pp. 61-63 (under seal).
[18] Rec. Doc. 10-8, pp. 227-233 (under seal).
[19] Rec. Doc. 10-8, p. 228 (under seal). Under the Policy, "Total Disability or totally disabled" meant "that due to Injuries or Sickness: 1. You are not able to perform the substantial and material duties of your occupation, and 2. You are receiving care by a Physician which is appropriate for the condition causing the disability."
29047v.2

**Information that Supports Our Decision:**

\*\*\*\*

According to the initial claim forms received, it is our understanding that you are claiming disability due to a sickness that has prevented you from performing the on-site project management duties of your occupation beginning on October 13, 2008…..Although you are claiming a disability that began on October 13, 2008, we did not receive notification of your claim until April 17, 2013 and did not receive any written proof of loss until April 22 and June 11, 2013 … Under the terms of the policy, written notification of claim should be provided to the company within 20 days of the onset of disability.  Written proof of loss should be provided within 90 days.  These requirements exist because, with the passage of time, it has become more difficult and essentially impossible for us to verify the extent and severity of the disability claimed.  Important information may be lost, destroyed, or otherwise unavailable.  Late submission also impaired our ability to monitor your disability as it progressed, to obtain contemporaneous information and to exercise our right to have you examined.[20]

Based on our review of your file, the medical information received does not support medical restrictions or limitations dating back to 2008 when you reportedly ceased performing on-site project management duties.[21]

\*\*\*\*

Wilson sought a review of Provident's decision and offered additional support for his claim.[22]  On April 2, 2014, Provident again denied Wilson's claim.[23]  In its denial, Provident explained that "[they had] determined that the restrictions and limitations, and thus disability, are not supported back to October 2008" as an on-site project manager.[24] Subsequently, Wilson provided additional medical information and appealed Provident's decision.[25]  After completing its appeal review on June 4, 2014, Provident once again

---

[20] Rec. Doc. 10-8, pp. 228 and 230 (under seal).
[21] Rec. Doc. 10-8, p. 230 (under seal).
[22] Rec. Doc. 10-8, pp. 241-250 (under seal).
[23] Rec. Doc. 10-9, pp. 4-6 (under seal).
[24] Rec. Doc. 10-9, p. 5 (under seal).
[25] Rec. Doc. 10-9, pp. 21-28; 38-41 (under seal).
29047v.2

denied Wilson's claim[26] concluding that Wilson was "fully able to perform the substantial and material duties of his occupation"; therefore, "Total Disability benefits [were] not payable."[27]

On August 11, 2014, Wilson filed the instant lawsuit against Provident seeking a declaratory judgment that he is entitled to coverage under his Disability Income Policy and for an order instructing Provident to pay said benefits and attorney's fees.[28] The subject motions ensued.

## II. SUMMARY JUDGMENT LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[29] "An issue is material if its resolution could affect the outcome of the action."[30] "When assessing whether a dispute to any material fact exists, we consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence."[31] "A party moving for summary judgment 'must "demonstrate the absence of a genuine issue of material fact," but need not negate the elements of the nonmovant's case.'"[32] If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence

---

[26] Rec. Doc. 10-9, pp. 77-82 (under seal).
[27] Rec. Doc. 10-9, p. 78 (under seal).
[28] Rec. Doc. 1.
[29] Fed. R. Civ. P. 56(a).
[30] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).
[31] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008)(citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).
[32] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, 494 (M.D.La. 2003)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25).
29047v.2

of a genuine issue concerning every essential component of its case.'"[33]  However, the non-moving party's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence".[34]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party'".[35]  The Court must resolve all reasonable factual inferences in favor of the nonmoving party.[36]  However, "[t]he court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim".[37]  "Conclusory allegations unsupported by specific facts, however, will not prevent an award of summary judgment; 'the plaintiff [can]not rest on his allegations . . . to get to a jury without 'any significant probative evidence tending to support the complaint.'"[38]

---

[33] *Rivera v. Houston Independent School Dist.,* 349 F.3d 244, 247 (5th Cir. 2003)(quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).
[34] *Willis v. Roche Biomedical Laboratories, Inc.,* 61 F.3d 313, 315 (5th Cir. 1995)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(internal quotations and citations omitted)).
[35] *Pylant v. Hartford Life and Accident Insurance Company*, 497 F.3d 536, 538 (5th Cir. 2007)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).
[36] *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).
[37] *RSR Corp. v. International Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010)(citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)).
[38] *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994)(quoting *Anderson*, 477 U.S. at 249)(citation omitted)).
29047v.2

## III. ANALYSIS

### A. Does ERISA govern the subject disability policy?

In order for a disability policy to be an "employee benefit plan," which includes "employee welfare benefit plan[s]," regulated by ERISA, the "plan must be established or maintained by an employer for the benefit of employees."[39]

Wilson argues that the disability policy is exempt from ERISA because the only people covered by the benefit plan were the three working owners of WWCC. In making his argument, Wilson relies upon DOL regulations and jurisprudence which provide that plans benefiting only partners or sole owners and their spouses fall outside of ERISA's reach.[40]

Provident maintains that Wilson's reliance on these DOL regulations is misplaced because Wilson is not a "sole" owner and WWCC is not a partnership. Provident cites a 2004 Fifth Circuit case, *Provident Life and Accident Ins. Company v. Sharpless*, as dispositive of the issue.[41]

*Sharpless*, involved a disability benefits plan that insured only the employee-shareholder physicians of the Anesthesia Research Specialists of Baton Rouge, a professional medical corporation whose physicians owned all of the corporation's

---

[39] *Meredith v. Time Ins. Co.*, 980 F.2d 352, 358 (5th Cir. 1993).
[40] Rec. Doc. 16-1; Rec. Doc. 29. (e.g., *Raymond B. Yates, M.D.,P.C. Profit Sharing Plan v. Hendon*, 124 S.Ct. 1330 (2004) explained how "[p]lans that cover only sole owners or partners and their spouses … fall outside [ERISA's] domain"; *Robertson v. Alexander Grant & Co.*, 798 F.2d 868 (5th Cir. 1986) holding that a retirement plan benefitting only partners was not covered by ERISA).
[41] *Provident Life and Accident Ins. Co. v. Sharpless*, 364 F.3d 634 (5th Cir. 2004) (hereinafter "*Sharpless*").
29047v.2

shares.⁴² However there is a distinction between the facts in *Sharpless* and the facts here, namely, unlike WWCC's shareholders, the shareholders in *Sharpless* had no familial ties. This Court can conceive of no reason to treat a closely held family enterprise different from a sole shareholder and spouse or partnership for purposes of ERISA.

However, the Court need not reach the issue of ERISA coverage because the Court finds that, for the reasons which follow, that regardless of whether ERISA or Louisiana law controls, Plaintiff's notice of claim, proof of loss and, ultimately, his suit are untimely.

### B. Timeliness of Providing Notice, Proof of Loss, and Instituting Legal Proceedings

Provident moves dismissal alleging that Wilson failed to timely provide notice of his claim, proof of loss, and failed to institute legal proceedings in accordance with the terms of the Policy.

1. Contractual Limitations Periods

Even were the Court to find that the subject policy is governed by ERISA, it is well established that "ERISA does not … specify a statute of limitations for filing suit under § 502(a)(1)(B)"⁴³ and contractually agreed upon limitations periods are enforceable unless they are unreasonable or there is a controlling statute to the contrary.⁴⁴ Looking to Louisiana's insurance statutes for guidance, the Court concludes that the limitations

---

⁴² *Id.* at 637. The Anesthesia Research Specialists of Baton Rouge offered two plans—one, which covered all employees, including shareholders—and one available only to shareholding employees. Only the latter was at issue in *Sharpless*.

⁴³ *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 134 S.Ct. 604, 608 (2013)(hereinafter "*Heimeshoff*"). Therefore, courts generally "'apply the most closely analogous statute of limitations under state law.'" *Kennedy v. Elec. Pension Plan, IBEW No. 995*, 954 F.2d 1116, 1120 (5ᵗʰ Cir. 1992)(quoting *DelCostello v. Teamsters*, 462 U.S. 151, 158 (1983)); *see also*, *Heimeshoff*, 130 S.Ct. at 609.

⁴⁴ *Heimeshoff*, 130 S.Ct. at 610.

29047v.2

periods specified in the disability policy at issue here are reasonable.  La. R.S. 22:975 sets forth minimum requirements for health and accident insurance policies issued in the State of Louisiana. La. R.S. 22:975(A)(3) requires that a notice of claim be given to an insurer within twenty days of the date of the accident causing injury or the commencement of the disability from injury or sickness. La. R.S. 22:975(A)(5) requires that proof of loss "be furnished to the insurer … in case of claim for loss of time from disability within ninety days after the termination of the period for which the insurer is liable."

The Court finds that the provisions regarding notice of claim and proof of loss in Provident's disability policy are wholly consistent with those required under Louisiana law. As for the allowable statute of limitations for filing suit, Provident's disability policy is actually more generous than state law.  Under La. R.S. 22:975(A)(11), "[n]o legal action shall be brought after the expiration of one year after the time proof of loss is required to be filed."  In contrast, Provident's policy allows a three year time period from providing proof of loss within which a party may institute legal proceedings.  The Court finds that whether analyzed under ERISA's reasonableness standard or state insurance law, the Provident disability policy at issue is in conformance with law.

    2. <u>Do Material Issues of Fact Remain?</u>

Wilson contends that, because Provident determined that he was not disabled as of October 13, 2008, there was no "covered loss" and, thus, the reporting requirements under the policy were never triggered. According to Wilson, a genuine issue of material fact exists as to when the 20 day notice of loss period, the 90 day written proof of loss,

and three year limitations period for filing suit were actually triggered.[45] Wilson argues that his notice of loss (4/17/2013), proof of claim (4/18/2013), and filing of his lawsuit (8/11/2014), may, in fact, be timely depending upon when his disability or "covered loss," began.

By this argument, Provident's claim denial has the effect of completely negating the reporting requirements under the policy. The loss reporting requirements of the policy would not be triggered unless and until Provident determines the claim as compensable. Provident disputes that Wilson was disabled as of October, 2008. But there is no dispute that Wilson seeks "disability benefits under the policy from October 13, 2008."[46] There is no dispute that Wilson alleges that, as of October 13, 2008, he "was unable to perform the substantial and material duties of his occupation."[47] In support of summary judgment, Wilson submits as an undisputed fact that "[i]n 2008, Mr. Wilson was no longer able to perform his duties as a project manager and lead on site construction representative for WWCC."[48] Provident denies that "medical records support a conclusion that Wilson had restrictions and limitations in 2008 that prevented him from performing the substantial and material duties of his occupation."[49] Most certainly, whether or not Wilson was disabled in October of 2008 for purposes of entitling him to benefits under the policy is in dispute. However, there is no dispute that Wilson claims his disability commenced in October of

---

[45] For the first time in his memorandum opposing Provident's motion (Rec. Doc. 27), Wilson suggests that he may not have been disabled in October of 2008, and offers an alternative date of April 13, 2013 as the date of his disability or covered loss.
[46] Rec. Doc. 20, ¶36.
[47] *Id.*
[48] Rec. Doc. 16-4, #10.
[49] Rec. Doc. 24-2, #9.
29047v.2

2008[50] and there is no dispute that Plaintiff first submitted an Individual Disability Claim Form on April 18, 2013.[51]

The Court cannot ignore the record which is replete with admissions made by Wilson that he deemed October 13, 2008 to be the date his disability began and the date from which he should be entitled to recover benefits.[52]  It is undisputed that Wilson has repeatedly claimed that he has been unable to perform the substantial and material duties of his occupation since October 13, 2008.[53]  Hence, the Court finds that there is no genuine issue of material fact in dispute as to when Wilson had knowledge of a medical condition allegedly affecting his ability to perform the substantial and material duties of his occupation, thereby triggering notice of claim reporting under the policy.  Based on the evidence in the record, no reasonable trier of fact could find that Wilson believed his disability or covered loss began on any other date besides October 13, 2008.

The Court also finds that Provident's denial of Wilson's disability claim does not bar it from asserting its contractual defenses of timely filing notice of claim, proof of loss, and instituting legal proceedings. In denying Wilson's disability claim, Provident determined that Wilson had failed to provide Provident with documentation demonstrating an inability to work as of the time he claimed he was no longer able to perform the substantial and material duties of his occupation on October 13, 2008.  Pursuant to Rule 8(d)(2) of the Federal Rules of Civil Procedure, "[a] party may set out 2 or more

---

[50] Rec. Doc. 20, ¶36 and record citations in Note 52, *infra.*
[51] Plaintiff's Statement of Undisputed Facts, Rec. Doc. 16-4, #14.
[52] *See*, Rec. Doc. 1, ¶9; Rec. Doc. 16-2, pp. 2-3; Rec. Doc. 16-1, p. 4; Rec. Doc. 16-1, p. 16; Rec. Doc. 16-4, n. 10; Rec. Doc. 20, ¶36.
[53] According to Wilson, his restrictions and limitations began in 2008-he has repeatedly alleged that and in documentation this is also reflected. (Rec. Doc. 10-3, p. 55.  Benefits Research Information Field Report dated July 23, 2013).
29047v.2

11

statements of a claim or defense alternatively or hypothetically." Moreover, "[a] party may state as many separate claims or defenses as it has, regardless of consistency."[54] Provident raised the defense of timeliness in its *Answers*.[55] The record also reflects that, from the inception of Wilson's claim for disability coverage, Provident openly raised concerns about Wilson's failure to timely comply with the filing requirements under the Policy. Therefore, based upon the evidence in the record, Provident's timeliness argument is properly before the Court.

Wilson admits that he did not submit a notice of claim to Provident within 20 days of October 13, 2008, or by November 2, 2008.[56] Wilson also admits that he did not submit a proof of loss for his claimed disability by May 13, 2009[57], or within the one year outer time limit of May 13, 2010.  In fact, Wilson did not provide written notification of his intention to file a disability claim until April 17, 2013, which was followed by a disability claim form dated April 18, 2013.[58]  Under the terms of the Policy, Wilson's 2013 notice of claim and proof of loss forms are untimely.

The Policy allows an untimely proof of his claim--after the 90 days of the start period for which payment was owed--if it was not reasonably possible for the insured to timely submit a proof of claim.  In any event, the policy requires that a proof of claim be submitted no later than one year beyond the 90 day proof of loss reporting period, unless the insured was legally unable to do so.  Although the Policy provided such exceptions,

---

[54] Fed. R. Civ. P. 8(d)(3).
[55] Rec. Doc. 6, pp. 1-2, (Second, Third, and Fourth Defense); Rec. Doc. 25, pp. 1-2 (Second, Third, Fourth, and Fifth Defenses).
[56] Rec. Doc. 27-1, #8 and #12.
[57] Rec. Doc. 27-1, #13.
[58] Rec. Doc. 27-1, #7 and #9.
29047v.2

the record is devoid of any evidence showing that "it was not reasonably possible" for Wilson to file his proof of loss by May 13, 2009, or that he was "legally unable to do so" by May 13, 2010. The closest attempt made by Wilson to justify the delay in filing his proof of claim appears in his July 23, 2013 response to an inquiry from Provident. When asked by the Provident representative why he had not filed his claim sooner, Wilson explained when he saw his physician in October of 2008 for his knee, he received injections, engaged in physical therapy, and had hoped that his condition might improve.[59] The Court finds that such an explanation does not amount to a reasonable explanation for the delay, or qualify as a legal explanation for the belated filing of his proof of claim. Moreover, the explanation was offered approximately five years from the date, that by his own account, Wilson's alleged disability began. Therefore, construing Wilson's claim in a light most favorable to him, the Court finds that Wilson's explanation does not demonstrate that it was not reasonably possible for him to file his notice and proof of loss timely. Accordingly, the Court finds that Wilson has failed to create a genuine issue of material dispute as to when the "covered loss" occurred and when the 20 day notice of claim and 90 day proof of claim were due.

### 3. Timeliness of Plaintiff's Suit

Under both Louisiana law and ERISA, the Court finds that Wilson has failed to timely file his lawsuit in the instant matter. "[U]nder Louisiana law, the parties to an insurance policy may contractually agree to limit the period within which suit must be filed, such that a contractual period of prescription is valid so long as is it does not contravene

---

[59] Rec. Doc. 10-3, p. 33 (under seal).
29047v.2

13

a state statute or public policy."[60]  As previously discussed by the Court, the disability policy at issue specifies a three year statute of limitations period for filing suit from the time proof of loss is required.  The Court finds this statute of limitations period is more favorable than the one year statute of limitations period permitted under La. R.S. 22:975(A)(11).

The three year statute of limitations is also viable under ERISA, even though the prescriptive period begins to run from the time proof of loss is required, and not from the time a claim is denied.  The United States Supreme Court held in *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, that "a participant and a plan may agree by contract to a particular limitations period, even one that starts to run before the cause of action accrues, as long as the period is reasonable."[61]  The only way the presumption of enforceability may be overcome is by a showing that the limitations period is unreasonable or exceeds the applicable statute of limitations.  The Court finds that no such showing has been made by Wilson.

As previously discussed, the record in this case is replete with admissions by Wilson that he deemed October 13, 2008 to be the date he could no longer perform his job duties and the date his disability began.  He also seeks to recover benefits starting from this date.  Therefore, contrary to Wilson's jurisprudentially unsupported arguments otherwise, whether Provident ultimately deemed Wilson was able to work on October 13, 2008, does not create a genuine issue of material fact as to when his claim should have been filed under the express terms of the Policy.  Had Wilson timely filed a claim at this

---

[60] *Noland v. Sun Life Assurance Co. of Canada*, 252 F.3d 436, *1 (5th Cir. 2001).
[61] *Heimeshoff v. Hartford Life & Acc. Ins. Co.,* 134 S.Ct. 604, 610 (2013).
29047v.2

time, under the terms of the Policy, his proof of loss would have been due no later than May 13, 2010. After that date, the only acceptable reason for not submitting proof of claim would have been if Wilson was legally unable to do so. Wilson's reason for not filing his claim in October of 2008, however, is not premised on any legal basis; rather, he deferred filing a claim because he hoped his condition would improve through physical therapy. Therefore, Wilson would have had three years from May 13, 2010, or May 13, 2013, to file his lawsuit. It is undisputed that Wilson did not file his lawsuit until August 11, 2014. The Court finds that Wilson has failed to create a genuine issue of material fact as to when the statute of limitations period for instituting his lawsuit should have been triggered under the Policy. Accordingly, Wilson's claim must be dismissed because his claim has prescribed under the terms of the Policy.

29047v.2

## IV. CONCLUSION

Wherefore, the Court GRANTS Provident Life and Accident Insurance Company's *Motion for Summary Judgment Seeking Dismissal of Plaintiff's Claim for Failure to Timely Provide Notice and Proof of Loss and Failure to Timely Institute Legal Proceedings.*[62]

Considering that the Court has found that Woodrow K. Wilson's claim has prescribed, the Court denies the *Motion to Establish that Case is Governed by ERISA*[63] filed by Provident Life and Accident Insurance Company's and the cross *Motions for Summary Judgment* on the administrative record filed by Woodrow W. Wilson and Provident Life and Accident Insurance Company, and they shall be dismissed as moot.[64]

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on <u>March 14, 2016</u>.

*Shelly D. Dick*

**JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

[62] Rec. Doc. 22.
[63] Rec. Doc. 21.
[64] Rec. Doc. 16 and Rec. Doc. 23.
29047v.2